IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RALPH SHAFFER,

        Plaintiff,

vs.                                     CASE NO. 1:11-cv-148-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions. (Docs. 7 and 10.)  For the reasons discussed below, the undersigned respectfully recommends that the Commissioner's decision be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on September 19, 2006, alleging a disability onset date of September 15, 2006.  Plaintiff's applications were denied initially and upon reconsideration and Plaintiff then filed a timely request for an administrative hearing.  Plaintiff appeared and testified at an administrative hearing on June 3, 2009.  On January 2, 2010, the Administrative

Law Judge ("ALJ") issued a written decision concluding Plaintiff was not disabled and thus was not entitled to a period of disability insurance benefits or to supplemental security income benefits.  Plaintiff timely filed a request for review by the Appeals Council, which denied his request on June 6, 2011.  This appeal followed.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]   In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]   Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]   Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF RECORD

### A.   Medical and Psychological Evidence

In March 1990,  Plaintiff's left eye was pierced by a screwdriver while he was performing automotive work.  He lost vision in the eye and suffered from ongoing pain until he underwent enucleation and placement of a prosthesis in September 1990.  R. 245-46, 250.

On June 6, 2001,  Plaintiff underwent a neurological evaluation by Stephen Nadeau, M.D. for complaints of chronic headaches.  Plaintiff reported that mild

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

headaches were not disabling but that during a severe headache he needed to retire to bed for much of the day.  He also reported insomnia, depression and frustration.  Dr. Nadeau diagnosed migraine headache and a sleep disorder and prescribed medication for headaches and sleep assistance.  R. 259-61.

On February 4, 2006, Plaintiff underwent a visual acuity examination.  His best corrected vision of his right eye was between 20/600-20/400.  R. 258.

On September 3, 2006, Plaintiff admitted himself to Meridian Behavioral Healthcare. Plaintiff had been drinking and threatened to commit suicide.  He reported feelings of hopelessness, poor motivation, insomnia, anhedonia, and depression. Plaintiff underwent detoxification and was diagnosed with depression, not otherwise specified; PTSD and alcohol abuse.  R. 262-72.

On December 23, 2006,  Plaintiff was evaluated by Eftim Adhami, M.D., for pain in his ankles, back and neck, stemming from a fall.  Plaintiff also reported using a magnifying glass to read.  Plaintiff exhibited positive straight leg testing at 30 degrees of supination.  The diagnoses were mild-to-moderate generalized osteoarthritis, possible rheumatoid arthritis, blind left eye, and right eye best vision corrected to 10/50.  R. 274-75.

On January 15, 2007, Plaintiff was seen by Norman S. Levy, M.D. for an ophthalmological evaluation.  Plaintiff had abnormal peripheral field of vision, and his best corrected vision in his right eye was 20/2000 at distance (20 feet) and 20/100 near 14 inches.  R. 280-89.

On March 14, 2007,  Plaintiff underwent a psychological consultative examination by clinical psychologist Jeff Gedney.  In addition to describing the injury in

6

which he lost his eye, Plaintiff reported that he fell off a boat ramp while working as a tugboat engine mechanic in 1996, breaking his shoulder and injuring his back.  Plaintiff was generally irritable and expressed feelings of helplessness and hopelessness regarding his situation.  Plaintiff said that he avoided public situations because "I've got a pretty bad attitude."  Plaintiff  indicated that approximately every six months he experiences a depressive episode in which he completely disengages and isolates himself within his camper without eating, bathing or otherwise taking care of himself. Dr. Gedney assessed that Plaintiff's mood was depressed and his affect was flat and withdrawn.  Dr. Gedney concluded that Plaintiff's symptoms were consistent with PTSD, including flashbacks of his injury, emotional hyperarousal in the presence of tools (particularly screwdrivers), avoidance of boats and water, and delayed sleep onset and poor maintenance because of racing thoughts and frequent nightmares.  Dr. Gedney diagnosed Plaintiff with: PTSD, chronic; Major Depressive Disorder, recurrent, moderate; Personality Disorder NOS, with antisocial personality traits; blindness in the left eye; 20/100 vision in the right eye; and chronic back pain. According to Dr. Gedney, Plaintiff's prognosis for return to work was poor given his vision impairment; psychiatrically, management of affective arousal and depression would be useful in increasing his likelihood of return to work.  R. 298-301.

On June 13, 2007, Plaintiff was examined by consultative physician Lance I. Chodosh, M.D.  Plaintiff reported that he: has difficulty getting out of the bathtub; has limited ability to walk more than one block; is able to stand for only twenty minutes at a time; must change positions frequently when sitting; and he could not squat and rise because of poor balance.  Dr. Chodosh found visual acuity in the right eye to be 20/70

7

for far vision and 20/50 for near vision.  He diagnosed the following impairments: chronic pain in the neck, back, left shoulder, and feet without evidence of significant impairment, absent left eye with vision in the right adequate for most needs, and abnormal psychology.  R. 324-28.

On July 3, 2007,  Plaintiff underwent a psychological evaluation and mental status examination by Carmen Tozzo-Julian, Ph.D.  Plaintiff appeared sad, with a restricted affect.  Plaintiff disclosed his history of difficulties with drugs and alcohol and reported feeling depressed most of his life, including hospitalizations for attempting suicide.   Plaintiff reported symptoms of feeling sad more days than not, crying frequently, feeling guilty, feeling worthless, social withdrawal, feeling tired, irritability, anxiety around others and low motivation for most activities.  He complained of insomnia and manic episodes, including periods of three days or longer where he experiences racing thoughts, increased energy, inability to concentrate and feelings of euphoria.  Dr. Tozzo-Julian diagnosed Plaintiff with bipolar-1 disorder, current episode; major depression, severe with psychotic features, and rule out alcohol abuse. He opined that  Plaintiff would not be able to produce quality work consistently because of depressive symptoms and racing thoughts, and would have difficulty coping with everyday stressors due to his depressive symptoms.  R.  337-41.

Dr. Gedney performed a second consultation psychological evaluation on May 22, 2009.   Plaintiff related his history of substance abuse, violent behavior, and legal difficulties, including incarceration.  Plaintiff reported no appreciable change in his activities of daily living or ability to complete tasks. He continued to complain of severe social dysfunction with social isolation and withdrawal as well as episodes of

8

decompensation with loss of appetite and poor personal hygiene.  Plaintiff's mental status was positive for anger, frustration, pressured speech and word-finding difficulties. His mood was frankly depressed and his affect was aroused, consistent with an agitated depression.  Plaintiff complained of poor short-term memory and being easily confused, presumably associated with mood disorder and stress. He also acknowledged passive suicidal ideation but denied intent or plan.  Dr. Gedney diagnosed PTSD, chronic; major depressive disorder, recurrent, moderate; and personality disorder, NOS, with antisocial personality traits.  He assigned  Plaintiff a GAF of 45.  R. 359-62.

Dr. Gedney completed a Mental Residual Functional Capacity Assessment questionnaire on which he noted "marked" limitation in maintaining attention and concentration for extended periods, accepting instructions and responding appropriately to supervision, working with others without becoming distracted or exhibiting behavioral extremes, and interacting appropriately with the general public.  R.  363- 64.

On June 2, 2009, Dr. Gedney offered the opinion that  Plaintiff's use of alcohol is to self-medicate, and that cessation of alcohol would have a "minimal" effect on Plaintiff's mental condition.  R. 364.

 Clinical and neuropsychologist Dr. William E. Benet examined Plaintiff on September 9, 2009.  On the Minnesota Multiphasic Personality Inventory,  Plaintiff's score was extremely elevated and a likely invalid profile was obtained.  Dr. Benet stated that this may represent an acute disturbance or exaggerated symptoms and malingering.   Dr. Benet diagnosed Plaintiff with PTSD, bipolar disorder, antisocial personality disorder NOS with antisocial features, and alcohol dependence in sustained

partial remission.  Plaintiff's GAF was 50 to 55.  Dr. Benet concluded that  Plaintiff's

prognosis was "poor" in view of the chronicity of his mental/emotional problems and

continuous alcohol use.  Dr. Benet assessed marked impairment in tasks requiring

sustained concentration, persistence, social interaction and adaptation, marked inability

to interact with co-workers, public and supervisors; and marked impairment in ability to

respond appropriately to usual work situations and to changes in a routine work setting.

Dr. Benet noted that alcohol "is likely contributing to  claimant's impairment.  Some

improvement may be expected with total abstinence, but he will continue to see

significant impairment associated with bipolar disorder."  R. 369-77.

### B. <u>Hearing Testimony</u>

Plaintiff was 43 years old at the time of the hearing.  He testified that he has a

GED and last worked in February of 2008, but only worked for a few days due to a back

injury.  Plaintiff stated that he lost his driver's license in 2008 due to a DUI.  He stated

that he was unable to work because his vision has progressively worsened in his

remaining eye.   Plaintiff testified that he must wear sunglasses because light causes

headaches, and his vision is blurry.  He stated that due to anger issues he has "lost

every job I've ever had."  Plaintiff contended that he had not consumed alcohol "in

excess" since 2006 and that he went through outpatient detoxification.  Plaintiff testified

that he had not had any alcohol in the month prior to the hearing.  He admitted that his

anger problems led to several incarcerations and the breakup of his family.  Plaintiff

testified that he could not read anything, could not see the colors in stoplights, and

could not cook except for using a microwave. He stated that his anger issues were not

brought on solely by alcohol use.  R. 28-78.

C.  **Findings of the ALJ**

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis, left-eye prosthesis, post-traumatic stress syndrome, mood disorder with borderline personality disorder, and alcohol abuse, in recent partial remission.  The ALJ found at step three that Plaintiff's mental impairments, including the substance use disorder, met the listings.  The ALJ found that if Plaintiff stopped the substance use, he would continue to have a severe impairment or combination of impairments.  The ALJ found, however, that if Plaintiff stopped the substance use he would not have an impairment or combination of impairments that met or equalled the listings.  She found that if Plaintiff stopped the substance use he would have the residual functional capacity to perform light work, except that he would be limited to occasional kneeling, stooping, and crouching, and must avoid dangerous moving machinery and unprotected heights, avoid occupations which require good depth perception, avoid activities which require fine work, and avoid work around bright lights.  She found that Plaintiff also must be able to work with sunglasses and with large visual objects, and must be limited to completing one to three step tasks with only occasional changes in the work setting. Plaintiff should have only superficial public interaction with no more than occasional interaction with coworkers.

Although Plaintiff's limitations prevented him from performing his past relevant work, the ALJ determined that considering his age, education, work experience, and residual functional capacity, there would be significant numbers of jobs in the national economy that Plaintiff could perform.  The ALJ considered the testimony of a vocational expert, who identified representative occupations such as stock room checker, ticket

11

taker, housekeeper, and hand packager.

## IV.  DISCUSSION

Plaintiff contends the Commissioner erred in making these findings because she failed to state what weight she afforded to Dr. Gedney's opinions, and because she improperly evaluated Dr. Benet's opinion.  Doc. 7.

Plaintiff asserts that in determining his RFC without consideration of the impact of alcohol use, the ALJ failed to state what weight she afforded to Dr. Gedney's opinion. Dr. Gedney assessed Plaintiff as having "marked" limitations in six areas, and "moderate" limitations in nine others.  *See* R. 363-64.  Dr. Gedney concluded that cessation of alcohol use would have only "minimal" effect on Plaintiff's limitations.  *Id*. The ALJ noted Dr. Gedney's diagnosis, but did not otherwise address Dr. Gedney's assessment of Plaintiff's limitations stemming from his mental impairments and his opinion that cessation of alcohol use would only minimally effect such mental impairments.

With regard to medical opinions of consultative physicians, "the ALJ [is] required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[21]  Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[22] the ALJ cannot reject portions of a medical

---

[21] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[22] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

opinion without providing an explanation for such a decision.[23]  Where an ALJ fails to

sufficiently explain how he reached his decision, the Court may not speculate.[24]

In this case the ALJ failed to follow these principles with respect to her evaluation

and treatment of the opinion Dr. Gedney.  Further, the ALJ's implicit rejection of Dr.

Gedney's opinion was material in formulating the hypothetical posed to the VE.  When

asked what impact a "marked problem accepting instructions and responding

appropriately to criticisms from supervisors" would have – one of the limitations

assessed by Dr. Gedney – the VE responded that such a limitation would "eliminate any

kind of work."  R. at 74.  Accordingly, the Court concludes that this case should be

remanded so that the ALJ can fully discuss Dr. Gedney's opinion, and explain the

weight afforded to that opinion.

The ALJ also erred in her treatment of Dr. Benet's medical opinion.  The ALJ

explained that she afforded "great weight" to Dr. Benet's opinion that "some"

improvement in Plaintiff's symptoms would occur with total abstinence of alcohol use.

However, Dr. Benet expressed that Plaintiff "*may*" experience improvement with total

abstinence from alcohol use, but he added that there would *"continue to be significant*

*impairment associated with bipolar disorder.*"  Dr. Benet opined that Plaintiff was

"markedly" limited in performing the following work-related activities: carry out complex

instructions, make judgments on complex work-related decisions, interact appropriately

with the public, supervisors and co-workers and respond appropriately to usual work

---

[23] <u>Morrison v. Barnhart</u>, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[24] <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984).

situations and to changes in a routine work setting.  R. 376.  As Plaintiff contends, Dr.

Benet's report does not state that Plaintiff would not have such "marked" impairments

absent alcohol use.  The ALJ failed to explain her implicit rejection of Dr. Benet's

opinion that Plaintiff would continue to have significant impairment from bipolar disorder

even if he abstained from alcohol.  The Court, therefore, concludes that remand is

appropriate for further consideration and explanation by the ALJ.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42

U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may

conduct further proceedings consistent with this Order, and fully discuss and give

appropriate weight to the opinions of the consulting physicians. The Clerk also should

be directed to enter final judgment in favor of the Plaintiff consistent with this Order and

to close the file.

**IN CHAMBERS** at Gainesville, Florida this 28th day of August 2012.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

9